OPINION
{¶ 1} Appellant, Johnny F. Wooten, appeals the judgment entered by the Lake County Court of Common Pleas. Wooten was convicted of one count of possession of cocaine.
 {¶ 2} On July 28, 2003, Deputy Allen Moon of the Lake County Sheriff's Office was patrolling the city of Painesville. He approached a green Mazda Miata, which was stopped at a stoplight. After the light changed, the Miata proceeded straight on West Erie Street, and Deputy Moon followed it. Deputy Moon observed the Miata cross the double-yellow line on two occasions. Initially, he testified that both times the vehicle crossed the double-yellow line by "a couple feet." However, he later testified that the distance was a couple inches. After the vehicle crossed the center line the second time, Deputy Moon activated his overhead lights and stopped the vehicle.
 {¶ 3} Wooten was driving the vehicle. In addition to Wooten, there was a female passenger in the vehicle, who was the owner of the car. Neither individual had driver's licenses with them, so Deputy Moon asked for their social security numbers, which were provided. A records check revealed that the female occupant had a warrant for her arrest and Wooten had no driving privileges.
 {¶ 4} Deputy Moon inquired whether Wooten was impaired. Wooten admitted drinking alcoholic beverages. However, it was determined that Wooten was not legally intoxicated. By this time, Deputy Zagrebnik arrived on the scene to assist Deputy Moon. Deputy Zagrebnik performed a search incident to arrest on Wooten and discovered 1.07 grams of cocaine on his person.
 {¶ 5} Wooten was charged with one count of possession of cocaine in violation of R.C. 2925.11, a fifth-degree felony. Wooten filed a motion to suppress evidence arising from the stop. A suppression hearing was held, and Deputy Moon testified for the state. The trial court denied Wooten's motion to suppress from the bench. A short recess was taken, and, then, Wooten pled no contest to one count of possession of cocaine. The trial court found Wooten guilty of the offense.
 {¶ 6} Wooten was sentenced to ninety days in jail and placed on community control for three years. In addition, his driver's license was suspended and he was ordered to attend treatment programs.
 {¶ 7} Wooten raises the following assignment of error:
 {¶ 8} "The trial court erred to the prejudice of defendant-appellant by failing to grant his motion to suppress in violation of his due process rights and rights against unreasonable search and seizure pursuant to the Fourth, Fifth andFourteenth Amendments to the United States Constitution and Sections 10, 14 and 16, Article I of the Ohio Constitution."
 {¶ 9} "Appellate review of a motion to suppress presents a mixed question of law and fact."[1] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[2] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[3]
 {¶ 10} As noted by Wooten, there are several appellate decisions that hold a "de minimis" marked lane violation is not a ground for an officer to initiate a traffic stop.[4]
However, for the reasons that follow, we hold that an officer may stop a motor vehicle after witnessing a traffic violation, including a marked lane violation.
 {¶ 11} Regarding "weaving" and marked lane violations, there are two legitimate bases for an officer to initiate a traffic stop. The first is that, pursuant to Terry v. Ohio, the officer has reasonable suspicion that a crime is occurring.[5] The second is that the officer has probable cause to believe that a traffic violation has occurred.[6] In many instances when a vehicle crosses the centerline, the officer could stop the vehicle based on probable cause that a traffic violation has occurred (a marked lane violation); and based on reasonable suspicion that the driver is operating the vehicle under the influence of alcohol. However, the stop does not violate theFourth Amendment so long as the circumstances meet one of the above standards.
 {¶ 12} "The investigative stop exception to theFourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent."[7] This standard applies to individuals driving motor vehicles.[8] Finally, "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances."[9] These circumstances are to be "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold."[10]
 {¶ 13} Sufficiently "erratic" driving is justification to support a Terry stop based on the officer's reasonable suspicion that the driver is operating the vehicle under the influence of alcohol.[11] Significant weaving within one's lane can rise to the level of erratic driving and reasonable suspicion that the driver of the vehicle is impaired to justify a stop, even if there are no other traffic violations.[12] On the other hand, a "de minimis" marked lane violation, standing alone, does not necessarily rise to the level of reasonable suspicion that the operator of the vehicle is impaired.[13]
 {¶ 14} However, the marked lane violation, standing alone, does constitute probable cause for the officer to stop the vehicle to investigate the lane violation itself. The Supreme Court of Ohio has held:
 {¶ 15} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under theFourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaged in more nefarious criminal activity."[14]
 {¶ 16} In interpreting Dayton v. Erickson, this court has held that when a police officer witnesses a minor traffic violation, he may stop the vehicle for the purposes of issuing a traffic citation.[15] Thereafter, the officer may investigate the driver of the vehicle for driving under the influence if the officer develops reasonable suspicion that the driver of the vehicle may be intoxicated.[16]
 {¶ 17} At the time of Wooten's arrest, Ohio's marked lane statute provided:
 {¶ 18} "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 19} "(A) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."[17]
 {¶ 20} This court has held that crossing a double-yellow line is a violation of R.C. 4511.33 and an officer's observation of that offense provides sufficient probable cause to initiate a traffic stop.[18] Similarly, in State v. Teter, this court held that a violation of R.C. 4511.33 established probable cause for the officer to stop the vehicle.[19]
 {¶ 21} Even if it could be argued that the "as nearly as is practicable" or some other language in R.C. 4511.33 reduced Deputy Moon's level of probable cause due to the severity of the weaving, we ultimately conclude that the stop was justified. It is important to note that Deputy Moon testified that Wooten's vehicle crossed a double-yellow line. Such action constitutes independent traffic violations apart from R.C. 4511.33. Specifically, R.C. 4511.31 provides:
 {¶ 22} "The department of transportation may determine those portions of any state highway where overtaking and passing other traffic or driving to the left of the center or the center line of the roadway would be especially hazardous, and may, by appropriate signs or markings on the highway, indicate the beginning and end of such zones. When such signs or markings are in place and clearly visible, every operator of a vehicle or trackless trolley shall obey the directions thereof, notwithstanding the distances set out in section 4511.30 of the Revised Code."
 {¶ 23} In the instant matter, Deputy Moon testified that Wooten's vehicle crossed the double-yellow line on two occasions. Crossing a double-yellow line is a violation of R.C. 4511.31. In addition, Wooten violated R.C. 4511.25, which provides that a vehicle shall be driven on the right side of the road. As noted by the Fourth Appellate District:
 {¶ 24} "[The officer] testified that he decided to pull the appellant over after observing the appellant's car cross the double yellow line separating the southbound lane from the hazardous zone in the center of the road. The appellant's crossing of this line constituted a traffic violation in and of itself for, in effect, driving left-of-center. R.C. 4511.25(A) (vehicle must travel on right side of roadway except in certain delineated circumstances); see, also, R.C. 4511.31 (driver must obey all signs or markings in hazardous zones)."[20]
 {¶ 25} Since Deputy Moon witnessed at least one traffic violation, if not multiple violations, he had probable cause to stop Wooten's vehicle.[21]
 {¶ 26} Wooten's assignment of error is without merit.
 {¶ 27} The judgment of the trial court is affirmed.
Ford, P.J., concurs, O'Toole, J., dissents.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
[2] Id., citing State v. Fanning (1982), 1 Ohio St.3d 19.
[3] Id., citing State v. McNamara (1997),124 Ohio App.3d 706, 707.
[4] See cases cited in State v. Haley (Mar. 16, 2001), 11th Dist. No. 2000-P-0021, 2001 Ohio App. LEXIS 1242, at *4.
[5] Terry v. Ohio (1968), 392 U.S. 1, 21.
[6] Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus.
[7] State v. Gedeon (1992), 81 Ohio App.3d 617, 618, citingTerry v. Ohio, supra.
[8] Id., citing State v. Heinrichs (1988),46 Ohio App.3d 63.
[9] State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
[10] State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
[11] Mentor v. Phillips (Dec. 29, 2000), 11th Dist. No. 99-L-119, 2000 Ohio App. LEXIS 6207, at *6, quoting State v.Spikes (June 9, 1995), 11th Dist. No. 94-L-187, 1995 Ohio App. LEXIS 2649.
[12] See State v. Weber, 11th Dist. No. 2003-L-090,2004-Ohio-2444, at ¶ 15.
[13] See, e.g., State v. Haley, supra, at *4-5.
[14] Dayton v. Erickson, 76 Ohio St.3d 3, syllabus. See, also, e.g., Whren v. United States (1996), 517 U.S. 806,812-813.
[15] State v. Jennings (Mar. 3, 2000), 11th Dist. No. 98-T-0196, 2000 Ohio App. LEXIS 800, at *8-9, quoting State v.Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, at *6-7. See, also, State v. Reithmann, 11th Dist. Nos. 2003-L-076 and 2003-L-079, 2005-Ohio-137, at ¶ 25.
[16] Id.
[17] R.C. 4511.33. This statute was amended after the date of Wooten's offense.
[18] State v. Lawless (June 25, 1999), 11th Dist. No. 98-P-0048, 1999 Ohio App. LEXIS 2941, at *7.
[19] State v. Teter (Oct. 6, 2000), 11th Dist. No. 99-A-0073, 2000 Ohio App. LEXIS 4656, at *11.
[20] State v. Fields (Nov. 29, 1999), 4th Dist. No. 99 CA 11, 1999 Ohio App. LEXIS 5744, at *12.
[21] Dayton v. Erickson, supra.