OPINION *Page 2 
{¶ 1} Defendant-Appellant Timothy Stricker appeals his October 11, 2006, conviction entered by the Licking County Municipal Court, on one count of operating a motor vehicle while under the influence, in violation of R.C. 4511.19(A)(1)(a).
 {¶ 2} Plaintiff-Appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 3} On February 11, 2006, Patrolman Lewis of the Newark Police Department pulled into the Speedway Gas Station parking lot at approximately 2:44 am, at the corner of Cedar Street and Main Street in the City of Newark, Licking County, Ohio. Ptl. Lewis had been in this store in the past, on several occasions to get coffee and knew the night shift store clerk, Jennifer Plummer.
 {¶ 4} As soon as he pulled up to the front of the store, Ms. Plummer came out of the store, and told him that the customer exiting the store appeared to be intoxicated and smelled like alcohol. (Supp. T. at 32). The customer was later identified as Appellant Timothy Stricker.
 {¶ 5} Ptl. Lewis then turned his attention to Appellant and observed him taking two or three steps before getting into his car. (Supp. T. at 40). Ptl. Lewis noticed that Appellant was stumbling, or not walking normally like he was impaired. (Supp. T. at 41, 47). Ptl. Lewis confirmed the identity of Appellant with Ms. Plummer and proceeded to follow Appellant to an intersection and initiated a traffic stop. (Supp. T. at 51, Tr. T. at 34).
 {¶ 6} Upon initiating the traffic stop, Ptl. Lewis observed that Appellant was operating the vehicle and that he had a female passenger in the car. The passenger *Page 3 
appeared to be intoxicated and even admitted to the officer that she was intoxicated. (Supp. T. at 44, Tr. T. at 41).
 {¶ 7} Ptl. Lewis requested Appellant's license, registration and insurance. At that point Ptl. Lewis discovered Appellant was driving under suspension. (Tr. T. at 34). Ptl. Lewis placed Appellant under arrest for driving under suspension and put him in the back of the cruiser.
 {¶ 8} Ptl. Lewis also observed that Appellant had a strong odor of an alcoholic beverage coming from his person. Id. Ptl. Lewis noticed this odor as Appellant was outside of the motor vehicle and when he was seated alone in his cruiser. (Tr. T. at 34, 36).
 {¶ 9} While Ptl. Lewis was placing Appellant under arrest for driving under suspension, the passenger began to attempt to flee the scene against the officer's orders to stay in the car and had to be tasered approximately one city block away from where the traffic stop was initiated due to her constant failure to comply with the officer's request. (Tr. T. at 62). After she was subdued and transported to the jail by another officer, Ptl. Lewis transported Appellant to the police department.
 {¶ 10} During his continued contact with Appellant, Ptl. Lewis noticed Appellant seemed to be more and more belligerent and upset about being detained and stopped. (Tr. T. at 36). Ptl. Lewis stated that through his training and experience as a police officer, this behavior can be consistent with someone under the influence. (Tr. T. at 37).
 {¶ 11} Once at the police station, Ptl. Lewis asked Appellant to submit to field sobriety tests. (Tr. T. at 38). He administered the Horizontal Gaze Nystagmus Test and observed six out of six clues. (Tr. T. at 40). Appellant refused to take any further tests *Page 4 
including a breath test used to determine the amount of alcohol in his system after being read the BMV 2255 form. Appellant was charged with operating a motor vehicle while under the influence, in violation of R.C. § 4511.19(A)(1)(a), driving under suspension, in violation of R.C. § 4510.11, and failure to reinstate, in violation of R.C. § 4510.21.
 {¶ 12} Appellant entered a plea of not guilty to the charges.
 {¶ 13} On June 5, 2006, Appellant, through counsel, filed a motion to suppress.
 {¶ 14} On August 4, 2006, the trial court held an oral hearing on Appellant's motion to suppress.
 {¶ 15} By Judgment Entry filed August 8, 2006, the trial court overruled Appellant's motion to suppress.
 {¶ 16} On September 27, 2006, Appellant filed a waiver of his right to a trial by jury.
 {¶ 17} On October 11, 2006, this matter came before the trial court on a bench trial.
 {¶ 18} At both the suppression hearing and the trial, the trial court heard evidence from Jennifer Plummer and Ptl. Lewis.
 {¶ 19} Jennifer Plummer testified that she was familiar with Appellant and had observed him in the store prior to the date in question and that she had spoken to him on those prior occasions. (Supp. T. at 14, Tr. T. at 27). She testified that she was outside smoking when Appellant's vehicle pulled into the lot. She stated that at that time, there were no other vehicles or customers in the lot. (Tr. T. at 13). She observed the Appellant get out of his vehicle and walk into the store to the restroom. (Tr. T. at 9). She noticed that he was staggering and slurring his words. Id. She also observed that *Page 5 
Appellant had an odor of an alcoholic beverage coming from his breath. Id. Per the policy at her place of employment concerning intoxicated customers, she felt compelled to alert the police due to the behavior of the Appellant. Id. She proceeded to take down the license number of the Appellant's vehicle. Id. She followed the Appellant out of the store to observe whether or not he was going to operate the vehicle. (Tr. T. at 10). As she exited the store, Ptl. Lewis pulled into the lot and she advised him that Appellant smelled of alcohol and appeared to have been drinking. (Supp. T. at 32, Id.).
 {¶ 20} At said trial, the court heard testimony from Ptl. Lewis and the store clerk, Jennifer Plummer.
 {¶ 21} At the conclusion of the trial in this matter, the trial court found Appellant guilty of operating a motor vehicle while under the influence, in violation of R.C. § 4511.19(A)(1)(a).
 {¶ 22} By Judgment Entry filed October 11, 2006, the trial court sentenced Appellant to one year in jail with all but 90 days suspended and imposed a fine of $2,500.00, with all but $750.00 suspended. Appellant's license was suspended for five (5) years. Appellant was also placed on community control sanctions for five (5) years.
 {¶ 23} Defendant-Appellant now appeals, raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 24} "I. THE TRIAL COURT ERRED FINDING THAT THE STOP OF THE MOTOR VEHICLE WAS JUSTIFIED BASED SOLELY ON THE INFORMANT'S TIP.
 {¶ 25} "II. THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT WAS INTOXICATED WHILE OPERATING A MOTOR VEHICLE. *Page 6 
 {¶ 26} "III. THE TRIAL COURT VERDICT AGAINST THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 Motion to Suppress {¶ 27} Initially, we note that there are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an Appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991),73 Ohio App.3d 486, State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an Appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. SeeState v. Williams (1993), 86 Ohio App.3d 37, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an Appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993),85 Ohio App.3d 623, 627, and State v. Guysinger (1993),86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996),517 U.S. 690, 699, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." In the matter presently before us, we find Appellant challenges the trial court's decision concerning the ultimate issue *Page 7 
raised in his motion to suppress. Thus, in analyzing these Assignments of Error, we must independently determine whether the facts meet the appropriate legal standard.
 I. {¶ 28} In Appellant's first assignment of error, Appellant argues that the trial court erred in overruling his motion to suppress alleging that the officer lacked a reasonable suspicion to justify the initial traffic stop. We disagree.
 {¶ 29} More specifically, Appellant argues that the trial court erred in finding that the stop was justified based solely on an informant's tip.
 {¶ 30} An investigative stop of a motorist does not violate a suspect's constitutional rights if the officer has a reasonable suspicion that the individual is engaged in criminal activity.Maumee v. Weisner (1999), 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (citingTerry v. Ohio (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889). "To justify a particular intrusion, the officer must demonstrate `specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"Weisner, 87 Ohio St.3d at 299, 720 N.E.2d 507 (quoting Terry,392 U.S. at 21). Evaluating the facts and inferences requires the court to consider the totality of the surrounding circumstances. State v.Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107,70 L.Ed.2d 94.
 {¶ 31} In the case sub judice, the stop was based, in part, upon a tip. The Ohio Supreme Court addressed the issue of tipsters and reasonable suspicion in Maumee v. Weisner, (1999), 87 Ohio St.3d 295,720 N.E.2d 507. According to the Weisner court, "the appropriate analysis is whether the tip itself has sufficient indicia of reliability to *Page 8 
justify the investigative stop." Weisner, 87 Ohio St.3d at 299,720 N.E.2d 507. The informant's veracity, reliability, and basis of knowledge are highly relevant factors in determining the value of the informant's tip. Id.
 {¶ 32} In this case, the tip came from an identified citizen, the night clerk at the store, with whom the officer was acquainted. InWeisner, the Ohio Supreme Court discussed the credibility to be given to an identified citizen tipster:
 {¶ 33} "The [United States Supreme Court] has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: `[l]f an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found rigorous scrutiny of the basis of his knowledge unnecessary.' Illinois v. Gates, 462 U.S. at 233-234,103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545.
 {¶ 34} "In light of these principles, federal courts have routinely credited the identified citizen informant with greater reliability. InUnited States v. Pasquarille (C.A.6, 1994), 20 F.3d 682, 689, for instance, the Sixth Circuit presumed the report of a citizen informant to be reliable because it was based on firsthand observations as opposed to ?`idle rumor or irresponsible conjecture,'" quoting United States v.Phillips (C.A.5, 1984), 727 F.2d 392, 397. Likewise, the Tenth Circuit has held that the statement of an ordinary citizen witness is entitled to more credence than that of a known informant." `Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen * * * in the position of a crime * * * witness." ` Easton v. Boulder (C.A.10, 1985), 776 F.2d 1441, 1449, quoting *Page 9 
LaFave, Search and Seizure (1978) 586-587. See, also, Edwards v.Cabrera (C.A.7, 1995), 58 F.3d 290, 294.
 {¶ 35} "Many Ohio appellate courts have also accorded the identified citizen witness higher credibility. . . In State v. Loop (Mar. 14, 1994), Scioto App. No. 93CA2153, 1994 WL 88041,. . . the court held that a telephone call from a citizen stating that a motorist might be having a seizure was sufficient to justify an investigative stop that produced evidence of drunken driving. The court reasoned that "`[information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable.'" Id. at 5, quoting State v. Carstensen (Dec. 18, 1991), Miami App. No. 91-CA-13, 301 at 4, 1991 WL 270665. . . . See, also,Fairborn v. Adamson (Nov. 17, 1987), Greene App. No. 87-CA-13, at 4-5,1987 WL 20264; State v. Jackson (Mar. 4, 1999), Montgomery App. No. 17226, at 5, 1999 WL 115010, observing generally that "`a tip from an identified citizen informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge,'" quoting Centerville v. Gress (June 19, 1998), Montgomery App. No. 16899, at 4-5, 1998 WL 321014." Weisner, supra. at 300-301,720 N.E.2d 507.
 {¶ 36} Turning to the case before this Court, we find that the tip satisfies the relevant factors cited in Weisner. First, Ms. Plummer, with whom Ptl. Lewis was acquainted, gave the tip to him in person. Second, the information provided by Ms. Plummer, the tipster, had indicia of reliability. See Weisner, 87 Ohio St.3d at 302,720 N.E.2d 507. Ms. Plummer provided an eyewitness account of her observations with *Page 10 
relevant details including the license plate number of Appellant's vehicle. Ms. Plummer was an identified citizen informant who had first hand knowledge of the events.
 {¶ 37} Further, Ms. Plummer's "tip" was subsequently corroborated by Ptl. Lewis. Upon receiving the "tip" from Ms. Plummer, Ptl. Lewis observed Appellant stumble toward his vehicle.
 {¶ 38} Based on the foregoing, we find that the "tip" from Ms. Plummer had sufficient indicia of reliability and that same was corroborated by Ptl. Lewis. We therefore find, under the totality of the circumstances, the officer had a reasonable and articulable suspicion that Appellant may have been driving while impaired and therefore, he was justified in stopping Appellant's vehicle.
 {¶ 39} Appellant's first assignment of error is overruled.
 II. {¶ 40} In his second assignment of error, Appellant assigns error to the trial court finding that he was intoxicated while operating a motor vehicle. We disagree.
 {¶ 41} Having found that the investigatory stop in this case was valid, we must now determine whether the officer was justified in requesting that Appellant perform the field sobriety tests.
 {¶ 42} A police officer may then investigate the driver for driving under the influence if there is a reasonable suspicion that the individual is intoxicated based on specific and articulable facts.State v. Wooten, 11th Dist. No. 2004-L-084, 2006-Ohio-199.
 {¶ 43} In addition to the information Ptl. Lewis received from Ms. Plummer, Ptl. Lewis also stated that he observed Appellant stagger while walking to his car. He *Page 11 
further testified that upon stopping Appellant's vehicle, he noticed a strong odor of alcohol coming from Appellant's person. Upon asking Appellant to exit the vehicle, Ptl. Lewis continued to notice the strong odor of alcohol coming from Appellant. He further observed Appellant become increasingly belligerent on his way to the police station in addition to Appellant's speech being slurred.
 {¶ 44} Based upon the foregoing, we do not find that the trial court erred in finding that the officer had a reasonable basis to investigate Appellant for driving under the influence and request that field sobriety tests be performed.
 {¶ 45} Appellant's second assignment of error is overruled.
 III. {¶ 46} In his third and final assignment of error, Appellant argues that the trial court's verdict was against the manifest weight of the evidence. We disagree.
 {¶ 47} Appellant argues that Ms. Plummer's testimony was conflicting with the testimony of Ptl. Lewis, resulting in the verdict being against the manifest weight of the evidence.
 {¶ 48} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also State v. Thompkins,78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. *Page 12 
 {¶ 49} In the case sub judice, a bench trial was held on October 11, 2006. At the bench trial, Patrolman Lewis testified that he was on duty on February 11, 2006, and wearing a uniform in a marked cruiser. (Tr. T. at 29). He further testified that, on such date, Ms. Plummer approached him in the parking lot of the Speedway Station where she worked and stated that she had observed Appellant and that he appeared to be impaired to her. (Tr. T. at 31). Ms. Plummer pointed out Appellant and Appellant's car, which was the only other car in the parking lot other than her own, to Patrolman Lewis, who observed Appellant stumble while walking to his car and then followed Appellant's vehicle out of the parking lot and stopped him. (Tr. T. at 31-33).
 {¶ 50} After Appellant's car stopped, Patrolman Lewis approached and noticed an odor of alcohol coming from Appellant's person. (Tr. T. at 34). Upon learning that Appellant was driving under suspension, Ptl. Lewis had Appellant exit vehicle wherein he again noticed a strong odor of alcohol coming from Appellant's person. (Tr. T. at 36). He also noticed that Appellant was becoming increasingly belligerent. Id. Once at the police station, Ptl. Lewis observed Appellant slur his speech. (Tr. T. at 38). Additionally, Ptl. Lewis observed 6 of 6 clues when Appellant performed the HGN test. (Tr. T. at 40).
 {¶ 51} The trial court also heard testimony from Jennifer Plummer. She testified that she was outside of the store smoking when Appellant pulled in and that his vehicle was the only one other than her own in the lot. (Tr. T. at 13). She stated that she watched him get out of his car and enter the store and go into the restroom. (Tr. T. at 9). She stated that he was staggering, slurring his words and that he smelled of alcohol. (Tr. T. at 9). She further stated that she wrote down his license plate number *Page 13 
and that she followed him outside to see whether or not he was going to get behind the wheel of his car. (Tr. T. at 10). She stated that it was at that time that Ptl. Lewis pulled into the lot and that she advised him that Appellant smelled of alcohol and appeared to be intoxicated. (Tr. T. at 10).
 {¶ 52} There was some discrepancy between Ptl. Lewis's testimony and Ms. Plummer's testimony as to the exact location of Appellant's vehicle in the parking lot. Ptl. Lewis testified that the vehicle was at the fuel pump closest to the store. Ms. Plummer testified that the vehicle was parked next to the store.
 {¶ 53} "While the [finder of fact] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. Indeed, the [finder of fact] need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096.
 {¶ 54} Upon review, we cannot find the weight of the evidence was against a trial court's finding of guilty. The trial court had the option to believe all or part of the testimony from any of the witnesses. Viewed as a whole, we find sufficient evidence to support the trial court's decision beyond a reasonable doubt, and find no manifest miscarriage of justice. *Page 14 
 {¶ 55} Appellant's third assignment of error is overruled.
 {¶ 56} For the foregoing reasons, the judgment of the Municipal Court of Licking County, Ohio, is affirmed.
Wise, J. Farmer, P. J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Licking County, Ohio, is affirmed.
 Costs assessed to Appellant. *Page 1