[Cite as *State v. Glenn*, 2015-Ohio-4832.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-L-029** |
| RAYMAL L. GLENN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000401.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Michael H. Peterson*, Michael H. Peterson & Associates, 820 Superior Avenue, Suite 800, Cleveland, OH  44113-1807 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.


{¶1}   Appellant, Raymal L. Glenn, seeks reversal of his conviction on one count of trafficking in heroin, a first-degree felony under R.C. 2925.03(A)(2).   Appellant challenges the trial court's decisions denying his motion to suppress evidence seized during a traffic stop on Interstate 90 in Mentor, Ohio, and overruling his motion to dismiss due to the police's failure to preserve evidence.  For the following reasons, the record supports the trial court's ruling.

{¶2}   Patrolman Donald Swindell is a duly certified peace officer with the Mentor Police Department.  As of May 25, 2013, he had seven years of experience and had participated in numerous arrests for possession of illegal substances.  He had also received specific training for conducting drug investigations, including the ability to recognize the odor of burnt and raw marijuana.

{¶3}   At about 3:25 a.m. on the date in question, Patrolman Swindell was alone in a marked police cruiser, travelling westbound on Interstate 90.  After driving into the jurisdiction of a neighboring city, the patrolman immediately used a median crossover and began to go east on the highway.  Upon completing the turn, he saw the taillights of a Ford SUV in the distance.  Since the SUV was the sole vehicle in sight, the patrolman decided to follow it, and began to accelerate in order to catch-up.

{¶4}   Appellant was a front-seat passenger in the Ford SUV.  The driver of the vehicle was Justin Grant, with whom appellant had been friends for about three years.  Grant did not have a valid driver's license.  Moreover, both men had smoked marijuana immediately prior to beginning their journey on Interstate 90.

{¶5}   Patrolman Swindell followed Grant's vehicle on the three-lane highway for approximately 2.5 miles.  Grant's vehicle stayed in the center lane throughout the majority of the incident.  After catching up to Grant, the patrolman kept the police cruiser in the left lane, driving approximately five car lengths behind.

{¶6}   According to Patrolman Swindell, at some point during the 2.5 miles, he observed the right-side tires of Grant's vehicle drift over the white lines separating the center lane from the right-hand lane.  Each of the right-side tires went completely over the white lines into the adjacent lane, and stayed there for approximately 100 feet prior to veering back into the center lane.  A quarter of a mile later, the patrolman observed a

2

second lane violation, in which the right-side tires of Grant's vehicle again swerved over the white lines and went completely into the right-hand lane. This time, the tires stayed in the right-hand lane for about two seconds before veering back into the center lane.

{¶7} After seeing the second lane violation, Patrolman Swindell initiated a traffic stop. When the patrolman first approached the vehicle, he immediately smelled an odor of burnt marijuana emanating from the vehicle's interior. In addition, when the patrolman asked to see Grant's license to drive, Grant quickly admitted he did not have a license and could only produce an Ohio identification card. As a result, Patrolman Swindell had Grant exit the SUV and informed him that he would be arrested for driving without an operator's license. During their ensuing conversation, Grant further admitted that there was a small container of marijuana inside the vehicle. Moreover, while searching Grant's person in conjunction with his arrest, the patrolman found a baggie of an illegal substance in his pocket.

{¶8} While Patrolman Swindell was finishing the process of handcuffing Grant and placing him in the backseat of his cruiser, a second officer arrived at the scene to assist. After explaining his intention to search the vehicle in light of Grant's admission as to the presence of marijuana, Patrolman Swindell approached the vehicle again with the second officer and asked appellant to exit the SUV. As appellant was stepping out, the patrolman again smelled the odor of burnt marijuana coming from the vehicle and appellant's person. Based upon odors, the patrolman decided to detain appellant and handcuffed his hands behind his back. As part of their conversation by the Ford SUV, appellant admitted to smoking marijuana before catching a ride with Grant. Patrolman Swindell then conducted a complete search of appellant's person and found a large wad of money in one of his pockets. Upon replacing the money in the pocket, the patrolman

3

escorted appellant to the second officer's cruiser and placed him in the backseat.

{¶9} With Grant and appellant secured in separate police cruisers, the officers searched Grant's vehicle and found the container of marijuana in the console between the front seats. After finishing this task, the second officer told Patrolman Swindell that he believed appellant had walked strangely while being escorted to the second cruiser. Specifically, the second officer noted that appellant took short strides and appeared to be holding his buttocks together. The second officer also opined that, in light of his prior experience in drug investigations, appellant was trying to conceal drugs.

{¶10} Accordingly, Patrolman Swindell ordered appellant to exit the cruiser and stand with his back to the officers. The patrolman noticed that the back of appellant's pants had been pulled up and was wedged between his buttocks. After tugging on the pants slightly so that they were hanging normally, the officers patted down the area and felt a hard object the size of a tennis ball. When the patrolman asked what the object was, appellant responded that it was "powder."

{¶11} No other searches were performed on appellant at the scene of the stop. However, after being transported to the police department, appellant complied with the patrolman's order to turn over the ball of drugs. Moreover, when appellant was required to squat down, a second hard object or ball fell from his pants. Both of the objects later tested positive for heroin.

{¶12} Appellant was indicted for trafficking in heroin, possession of criminal tools, and possession of marijuana. Upon entering an initial plea of not guilty, he moved the trial court to suppress any evidence seized from him during the traffic stop. As to the validity of initial stop, appellant argued that Patrolman Swindell's actions were unlawful because Grant did not commit a traffic violation prior to the stop. Regarding

4

the initial search of his person, he contended that the patrolman lacked the authority to go beyond a pat-down search because there was no probable cause to arrest.

{¶13} A two-day evidentiary hearing was held on the motion to suppress. Both Patrolman Swindell and the second responding officer testified for the state. In addition to testifying on his own behalf, appellant also presented Grant as a witness. As part of their respective testimony, both appellant and Grant asserted that Grant did not commit any lane violation prior to the initiation of the traffic stop.

{¶14} In conjunction with the motion to suppress, appellant sought discovery of all radio logs containing conversations between Patrolman Swindell, the dispatcher, and the second officer. During the evidentiary hearing, the state informed the trial court that the tapes of the radio communications pertaining to the disputed stop no longer existed because they were recorded over approximately thirty days after the incident. The state indicated that the decision to erase the tapes was made pursuant to department policy.

{¶15} In its judgment overruling the motion to suppress, the trial court expressly found Patrolman Swindell's testimony to be more believable than that of appellant and Grant. Based upon this, the court concluded that Grant committed two lane violations while the patrolman was watching the Ford SUV, thereby giving the patrolman probable cause to stop the vehicle. As to the validity of the original search of appellant's person, the trial court held that the odors emanating from the SUV and appellant were sufficient to establish probable cause that appellant had committed a criminal offense.

{¶16} In light of the ruling on the motion to suppress, appellant entered a no contest plea to trafficking in heroin. The remaining two counts of the indictment were dismissed. Upon considering the state's recitation of the underlying facts, the trial court found him guilty of the trafficking charge. Following a separate sentencing proceeding

5

in February 2015, the court ordered appellant to serve a six-year prison term.

{¶17} In appealing his "trafficking" conviction, appellant asserts two assignments of error for review:

{¶18} "[1.] The trial court committed reversible error in denying the appellant's motion to suppress, as the state failed to prove there was reasonable and articulable suspicion to stop and detain appellant.

{¶19} "[2.] The trial court committed reversible error by failing to dismiss the charges against the appellant after the Mentor Police Department failed to preserve probative relevant exculpatory evidence."

{¶20} Under his first assignment, appellant raises two challenges. First, he contends that the trial court erred in concluding that Patrolman Swindell's testimony was sufficient to establish that Grant committed two lane violations under R.C. 4511.33(A). Specifically, he argues that a lane violation has not occurred unless there is testimony indicating that the actions of the driver were unsafe or endangered others. Based upon this, appellant maintains that the patrolman had no authority to stop Grant's vehicle.

{¶21} "This court has repeatedly held that when a police officer witnesses a minor traffic violation, sufficient grounds exist for the officer to issue a citation. *State v. Simmons*, 11th Dist. No. 2011-L-029, 2011-Ohio-6339, ¶15; *State v. Burdick*, 11th Dist. No. 98-G-2209, 2000 Ohio App. LEXIS 2264, *13 (May 26, 2000); *State v. Yemma*, 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, *7 (Aug. 9, 1996). '(E)ven a de minimis traffic violation provides probable cause for a traffic stop * * *.' *State v. Hicks*, 7th Dist. No. 01 CO 42, 2002-Ohio-3207, ¶30, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 9, 1996-Ohio-431, 665 N.E.2d 1091 (1996). Further, in *State v. Wooten*, 11th Dist. No. 2004-L-084, 2006-Ohio-199, ¶11, this court held that when a vehicle crosses the

centerline, there are two legitimate grounds for an officer to make a traffic stop. First, pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968), an officer may initiate the stop based upon his or her suspicion that a traffic violation has occurred. *Id.* Second, pursuant to *Erickson*, *supra*, the officer can make the stop based on probable cause to believe a traffic violation has occurred (a marked lane violation). The stop does not violate the Fourth Amendment as long as it is supported by at least one of these grounds. *Wooten*, *supra*." *State v. Sitko.* 11th Dist. Portage No. 2011-P-0042, 2012-Ohio-2705, ¶18.

{¶22} According to appellant, the crossing of a marked lane of traffic must be accompanied by erratic or unsafe driving before a lane violation can be demonstrated. However, in *Kirtland Hills v. Kunka*, 11th Dist. Lake No. 2012-L-095, 2013-Ohio-738, this court expressly rejected that contention. In *Kunka*, the municipal court held that no violation of the "marked lanes/continuous lines" ordinance occurred because the state failed to present any evidence of unsafe driving by the defendant. In concluding that evidence of "bad" driving was unnecessary, we quoted the Ohio Supreme Court's decision in *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204: "'[a] traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33 ***, even without further evidence of erratic or unsafe driving.' *Id.* at syllabus." *Kunka*, at ¶20.

{¶23} If believed, Patrolman Swindell's testimony was sufficient to establish that the right-side tires of Grant's vehicle twice went over the white lines that separated the center lane from the right-hand lane. In addition, the patrolman testified that there was nothing in the center lane that justified Grants swerves into the right-hand lane. Hence, since all the necessary elements for a lane violation were satisfied, the patrolman had

7

probable cause to warrant the traffic stop.

{¶24} Under his second "suppression" argument, appellant submits that the two objects taken from his person should have been suppressed because the patrolman did not have sufficient cause to conduct a full search. He contends that the facts before the patrolman were only sufficient to justify a brief pat-down or frisk for weapons, and that he should have been released once it was discovered that he did not pose a threat. In ruling upon this issue in its suppression judgment, the trial court found that the patrolman had probable cause to believe that appellant had recently committed a drug offense.

{¶25} As a general proposition, a warrantless search of a vehicle is permissible when "'there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure.'" *State v. Walker*, 11th Dist. Lake No. 2009-L-155, 2010-Ohio-4695, ¶26, quoting *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992). In relation to a vehicle, a finding of probable cause to search can be based solely upon the smell of marijuana. *State v. Walker*, 11th Dist. Trumbull No. 2011-T-0069, 2012-Ohio-3303, ¶32. This logic has been extend to an odor of marijuana emanating from a person:

{¶26} "In *State v. Moore*, 90 Ohio St.3d 47, 50, 2000-Ohio-10, 734 N.E.2d 804 (2000), the Ohio Supreme Court recognized the doctrine of 'plain smell' as a corollary to the doctrines of 'plain view' and 'plain feel,' and held that 'if the smell of marijuana, as detected by a person who is qualified to recognize the odor, is the sole circumstance, this is sufficient to establish probable cause.' The court explained the rationale for its decision as follows:

{¶27} "'The use of one's sense of smell is no less reliable than other senses

8

upon which we rely. A familiar or distinctive odor, such as freshly cut grass, a bouquet of flowers, a hot apple pie, or the scent of perfume, evokes a vivid and accurate image in our minds. We draw factual conclusions about our surroundings from the use of our sense of smell. Consequently, we agree with the appellate court that a law enforcement officer, who is trained and experienced in the detection of marijuana, should not be prohibited from relying on his or her sense of smell to justify probable cause to conduct a search for marijuana.' *Id.* at 51.

{¶28} "The *Moore* court also determined that 'exigent circumstances' existed in that case 'to justify the warrantless search of defendant's person once [the police officer] had probable cause based upon the odor of marijuana detected on the defendant.' *Id.* at 48." *State v. Rodriguez*, 12th Dist. Butler No. CA2014-03-073, 2015-Ohio-571, ¶16-17.

{¶29} In this case, Patrolman Swindell testified that he had received training to conduct drug investigations, including the detection of the odor of burnt marijuana. He also stated that he was previously involved in hundreds of arrests for illegal possession of drugs. Thus, the patrolman was qualified to detect the odor of marijuana. Moreover, the patrolman testified that he smelled an odor of marijuana on appellant's person as he was exiting the SUV. Accordingly, the patrolman had probable cause to conduct a full search of appellant, in contrast to a mere pat-down for weapons.

{¶30} As appellant has failed to establish any violation of his Fourth Amendment rights during the stop of Grant's vehicle, the trial court properly overruled his motion to suppress. His first assignment lacks merit.

{¶31} Under his second assignment, appellant argues that, as a consequence of the police department's failure to preserve the radio logs of the communications relating

9

to the stop of Grant's vehicle, he was denied his due process rights to properly litigate the issues raised in his motion to dismiss. He asserts that the radio logs were likely to have materially exculpatory evidence regarding the manner in which Grant was driving the Ford SUV immediately prior to the traffic stop.

{¶32} "In *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, the Supreme Court of Ohio reiterated the current status of the law in Ohio regarding lost or destroyed evidence in criminal prosecutions. The Court held that the destruction of materially exculpatory evidence violates a defendant's due process rights under the Fourteenth Amendment of the United States Constitution. The Court continued by noting that: 'A clear distinction is drawn by [*Arizona v. Youngblood*, 488 U.S. 51 (1988)] between materially exculpatory evidence and potentially useful evidence. If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation.' Id. at ¶10.

{¶33} "'Evidence is deemed materially exculpatory only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."' *State v. Lothes*, 11th Dist. No. 2006-P-0086, 2007-Ohio-4226, at ¶17, citing *State v. Johnston* (1989), 39 Ohio St.3d 48, at [paragraph] 5 of the syllabus, 529 N.E.2d 898. 'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' Id. 'If the defendant meets his burden in demonstrating that the evidence destroyed was "materially exculpatory," he need not also demonstrate that he made a request for such evidence.' Id., citing *Johnston* at 61. (Citation omitted.)

{¶34} "'However, evidence is *not* materially exculpatory if it is merely potentially

10

useful to the defense.'  Id. at ¶18, citing *State v. Lewis* (1990), 70 Ohio App.3d 624, 634, 591 N.E.2d 854, 8 Anderson's Ohio App. Cas. 185.  '"Potentially useful" evidence is evidence that may or may not have incriminated the defendant.  The failure to preserve evidence that is merely *potentially useful* violates a defendant's due process rights *only if* the police or prosecution acted in bad faith.'  Id., citing *State v. Keith* (1997), 79 Ohio St.3d 514, 523, 1997-Ohio-367, 684 N.E.2d 47; *Lewis* at 634.  'The term "bad faith" generally implies something more than bad judgment or negligence.  "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud."'  Id., citing *State v. Wolf*, 154 Ohio App.3d 293, 2003-Ohio-4885, at ¶18, 797 N.E.2d 109, quoting *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 Ohio B. 337, 452 N.E.2d 1315."  *State v. Frasure*, 11th Dist. Ashtabula No. 2007-A-0033, 2008-Ohio-1504, ¶48-50.

{¶35}  As noted above, appellant maintains that any information in the radio logs would have been materially exculpatory because it could have confirmed that Grant did not commit any traffic violations prior to the stop.  However, the only testimony before the trial court on this point was provided by Patrolman Swindell.  He testified that any communication between himself, the dispatcher, and the second officer would not include discussion relating to the reason or basis of the traffic stop.  Instead, the communication would be limited to basic information, such as an initial indication that a stop was taking place, the location of the stop, the make of the vehicle, its plate number, and a final indication that the stop had ended.  Given the nature of this information, any evidence on the radio logs would not have been materially exculpatory, but instead would have only been potentially useful to appellant.

11

{¶36} Furthermore, in raising the "failure to preserve" issue, appellant has failed to offer any evidence showing that the police department acted in bad faith in taping over the radio logs after thirty days. There is nothing to indicate that an ulterior motive existed for destroying the logs pertaining to the "Grant" stop. Therefore, a due process violation did not occur.

{¶37} Since the failure to properly preserve the radio logs did not warrant the dismissal of all three charges against appellant, his second assignment is also without merit.

{¶38} The judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

12