[Cite as *State v. Asp*, 2011-Ohio-4567.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2010-CA-40 |
| JAMES ASP | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Cambridge
Municipal Court, Case No. 09CRB01643

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     September 9, 2011

APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

WILLIAM FERGUSON            MELISSA  M. WILSON
City of Cambridge Law Director     1009 Steubenville Avenue
150 Highlalnd Avenue            Cambridge, OH 43725
Cambridge, OH 43725

*Gwin, P.J.*

{¶1} Defendant-appellant James Asp appeals the July 21, 2010 Judgment Entry of the Cambridge Municipal Court overruling his motion to suppress evidence. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} At the evidentiary hearing on appellant's motion to suppress held March 24, 2010, and April 24, 2010, the following facts were established:

{¶3} Trooper Shawn Allar is an eight year veteran of the Ohio State Highway Patrol. On December 14, 2009 at approximately 10:06 p.m. he was on duty and patrolling on U.S. Route 40 in Guernsey County.

{¶4} Trooper Allar was westbound and observed a vehicle traveling eastbound at what appeared to be a speed over the posted limit of 55 miles per hour. Trooper Allar checked the vehicle's speed using a K 55 radar unit, and determined that the vehicle was traveling at 64 miles per hour. Trooper Allar had checked the calibration of the K-55 radar unit prior to starting his shift. Trooper Allar noted the make and color of the vehicle and turned to follow it.

{¶5} Trooper Allar observed the vehicle go over a small rise on the road which turned off Route 40. The vehicle which appellant was driving then proceeded north on Cooks Run Road and, utilizing its turn signal, turned into a private driveway. At this point Trooper Allar had turned on the cruiser lights. The video camera in the cruiser is retroactively activated thirty (30) seconds before the cruisers lights are turned on, and these events are shown in State's exhibit B, a video disk admitted into evidence.

{¶6} The Trooper followed the appellant's vehicle into the driveway of the residence and stopped behind the vehicle. As shown in State's exhibit B, the appellant exited his vehicle and walked across the front of the Trooper's cruiser with his hands in his pockets. Trooper Altar exited his cruiser, ordered the appellant to stop and remove his hands from his pockets. Appellant complied and Trooper Allar then frisked him for weapons. At this point Trooper Allar testified that he could observe appellant's eyes were glassy and blood shot and his face was flushed. Trooper Allar further smelled what he characterized as a strong odor of an alcoholic beverage coming from appellant.

{¶7} Trooper Allar called appellant by name because he knew him from prior professional contact. Appellant repeatedly asked the reason for the stop, and how it was that the Trooper knew his name. Trooper Allan testified that he knew appellant and called him by his first name because he had responded approximately two (2) years ago at the same residence. That prior incident involved charges against appellant, and an allegation that he used a Bobcat fork lift to lift up and then drop a vehicle containing the family of an ex- girlfriend. Trooper Allar testified that he remembered that he responded to that prior incident at that same address and having been advised, at that time, that appellant had been armed with a machete.

{¶8} Appellant demanded to see the speed on the K-55 radar. He continued to ask why he had been stopped, and requested to know what charge the officer was investigating. Trooper Allar testified that he attempted to have appellant sit in the backseat of the cruiser so that he could view the speed on the K-55 radar's display unit. He testified that the backseat was preferable for safety reasons to having a suspect sit in the driver's seat of the cruiser. Trooper Allar further testified that due to the radar

unit's configuration as well as the configuration of the interior of the cruiser, the display was most easily viewable from the rear passenger seat. The cruiser speed is shown on the digital read out on the right, and the object vehicle speed is shown on the left of the screen.

{¶9}   Appellant refused to be seated in the cruiser and walked away from Trooper Allar toward his own vehicle. According to Trooper Allar's testimony, appellant had pushed away from him before returning to his vehicle. Thereupon, as shown by the video, the Trooper followed him, put appellant in a bear hug and took him to the ground.

{¶10}  While on the ground, appellant was attempting to put his hands under his chest while Trooper Allar was on top of him. Appellant was continuously questioning the reason for the stop, and shouting "What is this all about?"

{¶11}  In response to Trooper Allar's call for backup, Trooper Bayless of the Highway Patrol arrived. Trooper Bayless testified that when he arrived he saw both vehicles and appellant on the ground with Trooper Altar on top of him. At this point, according to Trooper Allar, he had made the decision to arrest appellant for OVI and resisting arrest.  Because appellant would not stop struggling after repeated requests to cooperate by each of the Trooper's, Trooper Bayless applied a five (5) second dry stun to the appellant with a Taser. Trooper Bayless also testified that he noticed a strong odor of an alcoholic beverage coming from appellant.

{¶12}  The video indicates that once appellant was arrested he was read his *Miranda* rights.  Additionally in his post incident statement taken at the hospital, appellant verified that he had previously been read his *Miranda* rights by Trooper Allar and the scene of the arrest.

{¶13} In Trooper Allar's opinion, appellant was under the influence of alcohol at the time of the arrest. Appellant appeared to Trooper Allar to be paranoid and subject to mood swings. Trooper Allar testified that he found a bottle of whisky and a bottle of vodka in the appellant's vehicle but conceded that he did not take those items into evidence, nor did he note whether or not the bottles had been opened.

{¶14} Appellant was arrested and transported to the Guernsey County Jail where they refused to incarcerate him because he had been tasered. Appellant was then taken to the local hospital, Southeastern Ohio Regional Medical Center, to be cleared to be incarcerated. At the hospital, appellant refused a blood test. Because appellant had been tasered, and appellant was complaining, Sergeant Perkins of the Ohio State Highway Patrol arrived at the hospital to do an incident report. In that report appellant stated that he had been advised of his *Miranda* rights at the time of arrest, and that he was giving a statement voluntarily.[1]

{¶15} Appellant testified on his behalf. He denied that he was going over the fifty-five (55) mile an hour speed limit, and testified that he had never increased his speed to get away from the officer.

{¶16} Appellant testified at some length that he had been through years of very unpleasant litigation with the mother of his child, Connie Pace. That litigation has revolved around the issue of their daughter. Appellant testified that he believed that every Christmas season, Ms. Pace engineered some problem for him with law enforcement so that he could not exercise his parental rights with his daughter over the Christmas season. According to appellant's testimony, he felt certain that when the

---

[1] Because it was shift change for budgetary reasons Sergeant Perkins was replaced at the hospital by Sergeant Glennon who concluded the appellant's report.

Trooper pulled into the driveway behind him, Ms. Pace was again causing him a problem during the holiday season.

{¶17} Appellant testified that he found it very suspicious that Trooper Allar called him by his first name at the time of their initial contact. Appellant further testified that he found it very suspicious that his daughter was brought to the emergency room approximately fourteen (14) minutes later by the her mother, Ms. Pace. However, appellant conceded on cross-examination that his daughter had been sick that day and had previously been to the emergency room roughly seven hours before on that same day.

{¶18} On rebuttal, Trooper Allar testified that he did not know anyone named Connie Pace, that he was not aware of the legal problems existing between appellant and Ms. Pace, and that he certainly was not in any way part of a conspiracy with Ms. Pace to cause problems with the law for the appellant over the Christmas season.

{¶19} The trial court overruled the motion to suppress by Judgment Entry filed July 21, 2010.

{¶20} On September 23, 2010 appellant entered pleas of no contest to an amended count of "reckless operation", an amended count of "no operator's license", and "resisting arrest." The State dismissed the remaining charges.

{¶21} Appellant timely appealed raising the following Assignment of Error:

{¶22} "I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESSED BASED ON NO LAWFUL CAUSE TO STOP, DETAIN AND ARREST THE APPELLANT WITHOUT A WARRANT, STATEMENTS OBTAINED IN VIOLATION OF HIS FIFTH AMENDMENT RIGHT AGAINST SELF

INCRIMINATION, AND THE APPELLANT'S RIGHT TO COUNSEL AS THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶23} In his sole Assignment of Error, appellant cites as error the trial court's decision to overrule his motion to suppress the evidence. Specifically, he contends that the officer did not have a reasonable suspicion based upon articulable facts that he was speeding.  Additionally, appellant further contends that he did not knowingly, intelligently and voluntarily waive his right to remain silent. We disagree.

{¶24} In *Whren v. United States* (1996), 517 U.S. 806, the United States Supreme Court held:

{¶25} "The temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective." *Whren* at 1771. Less than one month later, the Ohio Supreme Court reached a similar decision in *City of Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091. In *Erickson,* the Court stated:

{¶26} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id. at syllabus. However, the Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the

standard is reasonable and articulable suspicion. *State v. Mays*, 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4538 at ¶ 23.

**{¶27}** Based on the above, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist. In fact, the Ohio Supreme Court stated that " * * * we conclude that where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation*,* the stop is constitutionally valid *regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question.*" (Emphasis added.) *City of Dayton v. Erickson*, supra at 11-12, 665 N.E.2d 1091. See, also, *State v. Rice*, Fifth Dist. No. 2005CA00242, 2006-Ohio-3703 at ¶33-34; *State v. Rice* (Dec. 23, 1999), 5th Dist. No. 99CA48. If an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. *State v. Mays*, supra at ¶ 8.

**{¶28}** In *Mays,* supra the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶ 15. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33

is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶ 17.

{¶29} In the case at bar, Trooper Allar first made a visual estimate of the speed of appellant's vehicle.  He then substantiated that the vehicle was in fact traveling at a speed greater than the posted speed limit by use of the K-55 radar unit.

{¶30} While appellant testified that he had not exceed the speed limit, the judge is in the best position to determine the credibility of witnesses, and his conclusion in this case is supported by competent facts. See *State v. Burnside* (2003)*,* 100 Ohio St.3d 152, 154-55, 797 N.E.2d 71, 74. The fundamental rule that weight of evidence and credibility of witnesses are primarily for the trier of fact applies to suppression hearings as well as trials. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584. The Officer's testimony represents competent, credible evidence that appellant was speeding. Therefore, the factual finding of the trial court that appellant was exceeding the speed limit is not clearly erroneous.

{¶31} Reviewing courts should accord deference to the trial court's decision concerning the credibility of the witnesses because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller* (1988), 37 Ohio St. 3d 71. In *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the

witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also *State v. DeHass* (1967), 10 Ohio St.2d 230, syllabus 1.

{¶32} We accept the trial court's conclusion that appellant's violation of the traffic laws gave Trooper Allar reasonable suspicion to stop appellant's vehicle because the factual findings made by the trial court are supported by competent and credible evidence. Thus, the trial court did not err when it denied appellant's motion to suppress on the basis that the initial stop of her vehicle was valid.

{¶33} In this case, appellant was arrested for OVI and resisting arresting arrest, but he was never prosecuted for the OVI offense. Thus, the question is not whether the evidence supported a finding beyond a reasonable doubt that appellant committed the OVI offense. The question is whether the officer had probable cause or a reasonable basis to believe that appellant had committed the offense of OVI.

{¶34} In Ohio, it is well settled that, "[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists." *State v. Wells,* Montgomery App. No. 20798, 2005-Ohio-5008; *State v. Cooper,* Clark App. No.2001-CA-86, 2002-Ohio-2778; *State v. Robinson,* Greene App. No. 2001-CA-118, 2002-Ohio-2933; *State v. Mapes,* Lake App. No. F-04-031, 2005-Ohio-3359 (odor of alcohol, 'slurred speech' and glassy and bloodshot eyes); *Village of Kirtland Hills v. Strogin,* supra; *State v. Beeley,* Lucas App. No. L-05-1386, 2006-Ohio-4799, paragraph 16, *New London v. Gregg,* Huron App. No. H-06-030, 2007-Ohio-4611.

**{¶35}** The phrase "under the influence of intoxicating liquor" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *Toledo v. Starks* (1971), 25 Ohio App .2d 162, 166. See, also, *State v. Steele* (1952), 95 Ohio App. 107, 111 ("[B]eing 'under the influence of alcohol or intoxicating liquor' means that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess"). See, *State v. Henderson,* 5th Dist. No.2004-CA-00215, 2005-Ohio-1644 at ¶ 32. [Citing *State v. Barrett* (Feb. 26, 2001), Licking App. No. 00CA 47].

**{¶36}** The evidence produced at the evidentiary hearing on appellant's motion to suppress supports the inference that appellant's consumption of alcohol on the night in question adversely affected his actions, reactions, conduct, movement or mental processes or impaired his reactions to an appreciable degree, thereby lessening his ability to operate his car on the night in question.

**{¶37}** Trooper Allar's testimony represents competent, credible evidence that appellant was operating his vehicle while under the influence of alcohol. Therefore, the factual finding of the trial court that Trooper Allar had probable cause to arrest appellant for an OVI violation is not clearly erroneous. Thus, the trial court did not err when it

denied appellant's motion to suppress on the basis that Trooper Allar had probable cause to arrest appellant for resisting arrest and an OVI violation.

**{¶38}** Appellant next contends that because he had been tasered before he was read his Miranda rights, it was incumbent upon the State to re-read those rights prior to obtaining his statement while in the hospital.

**{¶39}** A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. *Colorado v. Spring,* supra*,* 479 U.S. at 574, 107 S.Ct. at 857. See, also, *State v. Black* (1976), 48 Ohio St.2d 262, 2 O.O.3d 422, 358 N.E.2d 551, paragraph four of the syllabus, vacated in part (1978), 438 U.S. 910, 98 S.Ct. 3134, 57 L.Ed.2d 1154. Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which *Miranda* was based. *Colorado v. Connelly* (1986), 479 U.S. 157, 170, 107 S.Ct. 515, 523-24, 93 L.Ed.2d 473.

**{¶40}** In *Berghuis v. Thompkins* ( 2010), ―― U.S. ――, 130 S.Ct. 2250, 176 L.Ed. 2d 1098, the U.S. Supreme Court found no *Miranda* violation where the suspect made a statement nearly three hours after receiving his Miranda warning:

**{¶41}** "If Thompkins wanted to remain silent, he could have said nothing in response to Helgert's questions, or he could have unambiguously invoked his *Miranda* rights and ended the interrogation. The fact that Thompkins made a statement about three hours after receiving a *Miranda* warning does not overcome the fact that he engaged in a course of conduct indicating waiver. Police are not required to re-warn suspects from time to time. Thompkins' answer to Helgert's question about praying to

God for forgiveness for shooting the victim was sufficient to show a course of conduct indicating waiver." *Id.* at 2263.

**{¶42}** In *State v. Roberts* (1987), 32 Ohio St.3d 225, 513 N.E.2d 720. the Ohio Supreme Court applied a totality of the circumstances test and found that the warnings given earlier had gone stale at the time the defendant made incriminating statements:

**{¶43}** "The totality of the circumstances test is explained by the Supreme Court of North Carolina in *State v. McZorn* (1975), 288 N.C. 417, 219 S.E.2d 201. The following criteria are set forth:

**{¶44}** " * * * (1)[T]he length of time between the giving of the first warnings and subsequent interrogation, * * * (2) whether the warnings and the subsequent interrogation were given in the same or different places, * * * (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, * * * (4) the extent to which the subsequent statement differed from any previous statements; * * * [and] (5) the apparent intellectual and emotional state of the suspect. * * *" (Citations omitted.)   *Id.* at 434, 219 S.E.2d at 212. See, also, *State v. Myers* (Me.1975), 345 A.2d 500; *State v. Artis* (1981), 304 N.C. 378, 283 S.E.2d 522.

**{¶45}** "Applying these standards to the case *sub judice,* we note that Roberts was given warnings at the time of arrest (approximately two hours prior to talking to Fuqua), and that the record does not establish whether those warnings were given in the context of interrogation. Second, the prior warnings were given at Roberts' girlfriend's home while the subsequent interrogation took place at the county jail. Third, the warnings were given by police officers, whereas the interrogation was conducted by a probation officer (having a prior relationship with the defendant Roberts). Thus, the

warnings given at the time of arrest fail on the criteria necessary to satisfy the totality-of-circumstances test." Id. at 232–233, 283 S.E.2d 522

**{¶46}** In the case at bar, appellant concedes that he was read his *Miranda* rights at the time of his arrest. The record further shows that appellant that appellant explicitly stated that he understood his *Miranda* rights and proceeded to respond to Sergeant Gannon's questions. (T. at 25). Appellant he did not ask the officers to cease questioning him, he did not ask for an attorney and he did not refuse to answer any of the questions put to him by the officers. Further, appellant's statement at the hospital was obtained less than two (2) hours after Trooper Allar first noticed appellant's vehicle. (T. at 12-14; 77).

**{¶47}** The evidence supports the trial court's findings that appellant was properly advised of his *Miranda* rights and that he understood those rights. The trial court did not err in finding that under the totality of the circumstances; appellant's *Miranda* warnings had not gone stale.

**{¶48}** For the foregoing reasons, appellant's sole assignment of error is overruled.

{¶49} The judgment of the Cambridge Municipal Court, Guernsey County, Ohio

is affirmed.

By Gwin, P.J.,

Farmer, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JULIE A. EDWARDS

WSG:clw 0812

[Cite as *State v. Asp*, 2011-Ohio-4567.]

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
                Plaintiff-Appellee     :
                                       :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
JAMES ASP                              :
                                       :
                                       :
                Defendant-Appellant    :          CASE NO. 2010-CA-40


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Cambridge Municipal Court, Guernsey County, Ohio is affirmed.  Costs to appellant.


                                       _____
                                       HON. W. SCOTT GWIN


                                       _____
                                       HON. SHEILA G. FARMER


                                       _____
                                       HON. JULIE A. EDWARDS