[Cite as *Kirtland Hills v. Kunka*, 2013-Ohio-738.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| VILLAGE OF KIRTLAND HILLS, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-L-095** |
| PHILIP M. KUNKA, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Willoughby Municipal Court, Case No. 12 TRC 03392.

Judgment: Reversed and remanded.

*Joseph P. Szeman*, Village of Kirtland Hills Prosecutor, 100 Society National Bank Building, 77 North St. Clair Street, Suite 100, Painesville, OH 44077 (For Plaintiff-Appellant).

*Joseph R. Klammer*, The Klammer Law Office, Ltd., Lindsay II Professional Center, 6990 Lindsay Drive, #7, Mentor, OH 44060 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1}   Plaintiff-appellant, Village of Kirtland Hills, appeals the Judgment of the Willoughby Municipal Court, granting defendant-appellee, Philip M. Kunka's, Motion to Suppress.  The issue before this court is whether a reasonable suspicion to conduct field sobriety tests exists where the police officer has observed a marked lane violation and the suspect has a strong odor of alcohol about his person, red/glassy eyes, and has admitted to drinking two beers.  For the following reasons, we reverse the decision of the court below.

{¶2} On May 31, 2012, Patrolman Clyde Null of the Village of Kirtland Hills Police Department issued Kunka a traffic ticket, charging him with OVI, a misdemeanor of the first degree in violation of Village of Kirtland Hills Codified Ordinances 333.01(a)(1)(A) (under the influence of alcohol) and (D) (prohibited breath alcohol concentration), and a marked lanes/continuous lines of traffic violation, a minor misdemeanor in violation of Village of Kitland Hills Codified Ordinances 331.08(a).

{¶3} On June 4, 2012, Kunka entered a plea of not guilty.

{¶4} On July 6, 2012, Kunka filed a Motion to Suppress and Motion in Limine, seeking, inter alia, to prohibit the introduction of the results of field sobriety tests and observations made during the performance thereof as evidence, on the grounds that the officer "lacked a reasonable and articulable suspicion to continue the detention and to request Defendant to exit his vehicle for the purposes of conducting further investigation."

{¶5} On July 18, 2012, a hearing was held on the Motion to Suppress. Patrolman Null testified on behalf of the Village of Kirtland Hills.

{¶6} On August 9, 2012, the municipal court issued a Judgment Entry, granting the Motion to Suppress "as to the issues of continued detention, field sobriety testing and warrantless arrest." The court made the following findings:

{¶7} 3. The officer testified that on May 31, 2012 he was on routine patrol duty and was on Little Mountain Road approaching State Route (SR) 84 when he first observed a vehicle approaching from his left, which was eastbound on SR 84. Officer Null first observed a vehicle approaching from his left, which had no front license

2

plate. As officer Null entered the roadway and approached the vehicle, he observed that the vehicle had a rear license plate, but the plate was not illuminated. The time was 1:47 AM and there was little traffic. Officer Null testified that he could read the plate as it was illuminated by his headlights.

{¶8} 4. While never established at the hearing as to distance, speed and time travelled, the testimony of officer Null was that he proceeded east on SR 84, caught up to defendant's vehicle, which was operating neither too fast, nor too slow (as established under cross examination) and made several observations as to the operation of the vehicle. These observations included, after following the defendant for a few hundred feet, crossing over a solid white fog line for two seconds, then five seconds later, crossing over a double yellow line for three seconds. It was the testimony of officer Null that all these actions occurred within the Village of Kirtland Hills on SR 85.

{¶9} 5. At some point after the yellow double line crossing and prior to stopping defendant in the City of Mentor, officer Null, while operating his motor vehicle, entered the license plate into his mobile data terminal (MDT). Officer Null testified that this is his practice, in order to ascertain the identity and status of the registered owner of the vehicle prior to conducting a stop. Some thirty seconds later, he received a reply on the MDT from the Ohio

Bureau of Motor Vehicles (BMV) as to the registration information sought and stopped the defendant outside of the Village. No evidence was presented as to the time stamp of the registration request and reply of BMV. The defendant promptly pulled over to the side and completely off of the roadway in a safe manner. Officer Null parked his police car directly in the eastbound roadway of SR 84, causing traffic to completely go left of center and cross the double yellow lines of the roadway, in order to proceed in an eastbound direction.

{¶10} 6. During the thirty second time period when officer Null was awaiting a computerized response from BMV, no further violations or any other improper driving of any kind were observed, according to officer Null.

{¶11} 7. Under cross examination, officer Null testified that as it relates to the defendant, there were no speed issues as to his driving, no swerving, he crossed through an intersection with no problem where there was a curve in the roadway, and but for the two lane violations, the driving of the defendant was lawful. The defendant, according to officer Null, violated section 311.08(a) of the Kirtland Village ordinances. This section states that: "* * * A vehicle shall be driven, as nearly as practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with

4

safety." * * * [T]here was no evidence that the roadway was anything other [than] a single lane roadway in each direction and there was no evidence that any driving of the defendant was not made safely.

{¶12} 8. Absent a violation of 331.08(a), the officer testified that he observed within his jurisdiction, no front plate as well as no illumination of the rear license plate. These are both violations of Kirtland Hills ordinances and/or state law, even though the officer did not charge defendant for these offenses. * * * There has been no challenge to the front plate or license plate illumination violation and therefore, the stop was valid.

{¶13} 9. The defendant asks the court to suppress illegally seized evidence as the officer had no reason to further detain the defendant for alcohol testing. * * * The stop was not near alcohol selling establishments, there was no erratic driving before the stop to indicate a lack of coordination, the driving observed on the video was normal, there was no report of an intoxicated driver, no speech impairment was reported or observed on the audio/video, the defendant's demeanor was cooperative, there were no other movements or actions of the defendant that indicated a lack of coordination. The officer testified under cross examination that the license plate violations were not independently indicative of an intoxicated driver. The officer testified, confirmed by the video, that

the defendant pulled over appropriately upon signaling to stop, he followed instructions of the officer, had no difficulty removing his operator's license, exited the vehicle properly and closed the door. The video shows the defendant was engaged in being cooperative with the officer, and although he did admit to drinking, the admission was to two beers. Defendant did not deny consuming alcohol or that there was an odor of an alcoholic beverage present. The hour of the day was not after bar closing time, and it was on a weekday night. The officer testified that the defendant was not wearing glasses or contacts, yet the defendant clearly advised the officer that he was wearing contacts. The court finds that the Kirtland Hills Village officer did not have sufficient reasonable suspicion of intoxication to further detain the defendant and remove him from his vehicle for sobriety testing.

{¶14} On August 15, 2012, the Village of Kirtland Hills filed its Notice of Appeal. On appeal, Kirtland Hills raises the following assignment of error:

{¶15} "The trial court erred in granting the defendant-appellee's Motion to Suppress based upon insufficient reasonable suspicion to extend the traffic stop and request the appellee perform field sobriety tests."

{¶16} At a suppression hearing, "the trial court is best able to decide facts and evaluate the credibility of witnesses." *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 41. "Its findings of fact are to be accepted if they are supported by competent, credible evidence, and we are to independently determine whether they satisfy the

6

applicable legal standard." *Id.*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8; *State v. Serafin*, 11th Dist. No. 2011-P-0036, 2012-Ohio-1456, ¶ 21 ("[o]nce the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts") (citation omitted).

{¶17} Under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, police officers may stop a motorist in order to investigate a reasonable suspicion of criminal activity. *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 710 N.E.2d 507 (1999), citing *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001) (the search and seizure provisions of the Ohio and United States Constitutions afford "the same protection"). "The reasonable suspicion necessary for such a stop * * * involves a consideration of 'the totality of the circumstances.'" *Maumee* at 299, citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶18} The decision to conduct field sobriety tests represents a greater intrusion into an individual's Fourth Amendment rights than the initial stop. *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (11th Dist.1998). Accordingly, "the request to perform these tests must be separately justified by specific, articulable facts showing a reasonable basis for the request." *Id.* "Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be

7

intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." *State v. Yemma*, 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361 (Aug. 9, 1996), *8.

{¶19} Applying the reasonable suspicion standard to the facts of this case, Patrolman Null was justified in the further detention of Kunka to conduct field sobriety tests and, so, the municipal court erred in holding otherwise. The specific and articulable facts indicating that Kunka may have been intoxicated are the two marked lanes/continuous lines of traffic violations, the "strong odor of alcohol emitting from his breath," his "red, glassy, and bloodshot" eyes, Kunka's statement to Null "that he had two beers," and the fact that the stop occurred in the early morning hours. *See Evans* at 63, fn. 2 (providing a nonexclusive list of "relevant circumstances"). This court has consistently held that similar fact patterns justify the administration of field sobriety tests.

{¶20} The municipal court gave no consideration to the marked lanes/continuous lines of traffic violations, finding "no evidence that any driving of the defendant was not made safely," and, therefore, no violation of the marked lanes/continuous lines of traffic ordinance. This conclusion is directly contrary to the Ohio Supreme Court's holding in *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, that "[a] traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33 [the state law equivalent of Kirtland Hills Ordinance 331.08(a)], even without further evidence of erratic or unsafe driving." *Id.* at syllabus. The court explained that the marked lanes/continuous lines of traffic statute "requires a driver to drive a vehicle entirely within a single lane of traffic." *Id.* at ¶ 16. "The phrase 'as nearly as is practicable' does not give the driver the option to

8

remain within the lane markings; rather, the phrase requires the driver to remain within the lane markings unless the driver cannot reasonably avoid straying." *Id.* at ¶ 18.

{¶21} We recognize that the municipal court affirmed the validity of the stop based on license plate violations, so that its failure to recognize a violation of the marked lanes/continuous lines of traffic ordinance is a moot point. However, the court also concluded that the marked lanes/continuous lines of traffic violations did not indicate a "lack of coordination" by Kunka. *Evans* at 63, fn. 2 ("any indicia of erratic driving before the stop that may indicate a lack of coordination"). We disagree. Regardless of whether the lane violations in this case are characterized as substantial or "de minimis," they do constitute erratic driving which may indicate a lack of coordination, particularly where there is no apparent reason in the record that would account for Kunka's failure to remain within the marked lanes/lines of traffic. The fact that Kunka "safely" crossed over the marked lanes does not support the conclusion that his driving was not erratic.

{¶22} The lane violations should also be considered part of "the totality of the circumstances" surrounding the stop. In other words, while the lane violations may not in and of themselves provide a reasonable suspicion of impaired driving so as to justify the performance of field sobriety tests, they are rightly considered in conjunction with the other evidence in the record. As this court observed in *Evans*, "[c]ourts generally approve [the decision to conduct field sobriety tests] only where the officer bases his decision on a number of factors." *Evans* at 63.

{¶23} Finally, it should be recalled that Ohio courts emphasize that "[a] court reviewing the officer's actions must give due weight to his experience and training and

9

view the evidence as it would be understood by those in law enforcement." *State v. Andrews*, 57 Ohio St.3d 86, 88, 565 N.E.2d 1271 (1991); *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264 (2nd Dist.), ¶ 13; *State v. Tournoux*, 11th Dist. No. 2009-P-0065, 2010-Ohio-2154, ¶ 15. In the present case, Patrolman Null testified that the lane violations gave rise to his initial suspicions that Kunka might be impaired and became the focus of his investigative stop.

{¶24} Considering the totality of the circumstances identified above, the marked lanes/continuous lines of traffic violations, the strong odor of alcohol, the bloodshot eyes, Kunka's admission to having had two beers, and the early morning hour, Patrolman Null possessed a reasonable suspicion of Kunka's impairment sufficient to justify the performance of field sobriety tests. This court has so held in factually similar cases. *State v. Wiesenbach*, 11th Dist. No. 2010-P-0029, 2011-Ohio-402, ¶ 24 ("a valid stop for a license plate violation occurred and the odor of alcohol was combined with glassy, bloodshot eyes, and an admission of consuming alcohol"); *State v. Dierkes*, 11th Dist. No. 2008-P-0085, 2009-Ohio-2530, ¶ 25 (stop occurred in the early morning hours; there was a moderate odor of alcohol; appellant admitted that he had been drinking); *also Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶ 21 (where "the trooper observed appellant drift across the white fog line on two occasions * * *, and after approaching the vehicle and speaking with appellant [and noticing that he had bloodshot, glassy eyes and smelled of alcohol], the trooper had probable cause to arrest him for driving while under the influence of alcohol").

{¶25} In fact, there is considerable precedent in this and other courts to support the conclusion that Patrolman Null had a sufficiently reasonable suspicion of Kunka's

10

impairment to warrant field sobriety tests without consideration of the marked lanes/continuous lines of traffic violations. *State v. Hernandez-Rodriguez*, 11th Dist. No. 2006-P-0121, 2007-Ohio-5200, ¶ 13 ("the trooper's testimony regarding the strong odor and appellant's admission to consuming a couple [of] drinks provide sufficient indicia of intoxication justifying the tests"); *Santiago* at ¶ 12 ("a strong odor of an alcoholic beverage, without other significant indicia of intoxication, may be sufficient to provide an officer with reasonable suspicion of driving under the influence"); *State v. Maddux*, 6th Dist. No. WD-08-065, 2010-Ohio-941, ¶ 7 ("[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists") (citation omitted); *State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 18 (the same); *State v. Asp*, 5th Dist. No. 2010-CA-40, 2011-Ohio-4567, ¶ 34 (the same).

{¶26} Kunka maintains that the present case is distinguishable due to the "overwhelming evidence that [his] driving was not impaired," which the municipal court "relies on * * * extensively in its decision." Kunka claims the evidence of unimpaired driving "negate[s] any suspicion raised by the humble swerving violation." We disagree. The test for determining whether a reasonable suspicion exists is not a balancing test whereby the officer is required to weigh the indicia of sobriety against the indicia of intoxication to determine whether it is more likely or not that a driver is impaired. Rather, the reasonable suspicion standard represents the "quantum of individualized suspicion" necessary to effect a constitutional search or seizure. *United States v. Martinez-Fuerte*, 428 U.S. 543, 560, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). In the

11

context of the present case, reasonable suspicion is the "quantum of individualized suspicion" necessary to warrant further investigation of a possible OVI offense by having the suspect perform field sobriety tests. Where the officer possesses a reasonable suspicion that a suspect is guilty of an OVI offense, he has the authority, if not the duty, to expand the scope of the stop to conduct further investigation regardless of whether circumstances exist, as they inevitably will, that support the conclusion that the suspect is innocent. The suspect's ultimate guilt or innocence is not the issue in an investigatory stop, but, rather, whether reasonable justification exists for continuing the search/seizure.

{¶27} The Village of Kirtland Hills' sole assignment of error is with merit.

{¶28} For the foregoing reasons, the Judgment of the Willoughby Municipal Court, granting Kunka's Motion to Suppress, is reversed and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against the appellee.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.

12