[Cite as *State v. Consolo*, 2013-Ohio-2611.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0106** |
| WILLIAM F. CONSOLO, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2011 TRC 16608.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Edwin R. O'Day*, 167 Royal Oak Drive, Aurora, OH 44202, and *Joseph C. Patituce*, Patituce & Associates, LLC, 26777 Lorain Road, Suite 708, North Olmsted, OH 44070 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals the August 30, 2012 Journal Entry of the Portage County Municipal Court, Ravenna Division, suppressing the defendant-appellee, William F. Consolo, Jr.'s breath test results. The issues before this court are whether the State bears the burden of producing evidence of the general, scientific reliability of the Intoxilyzer 8000 when challenged in a motion to suppress; whether the Ohio Administrative Code requires a dry gas control between subject tests; and whether the alleged alteration of Consolo's breath test results by the Ohio

Department of Health on its website is reason to suppress the results. For the following reasons, we reverse the decision of the court below.

**{¶2}** On December 19, 2011, the Streetsboro Police Department issued Consolo a traffic ticket, charging him with OVI, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a) (driving under the influence of alcohol) and (d) (driving with a prohibited breath alcohol concentration), and with violating the Approaching a Stopped Emergency Vehicle statute, a minor misdemeanor in violation of R.C. 4511.213.

**{¶3}** On December 23, 2011, Consolo entered a plea of not guilty.

**{¶4}** On February 21, 2012, Consolo filed a Motion to Suppress, seeking, inter alia, to suppress the breath test results of the Intoxilyzer 8000. As grounds for suppression, Consolo argued that the breath test was not conducted in accordance with the regulations of the Ohio Department of Health as set forth in Chapter 3701-53-02 of the Ohio Administrative Code, and the Intoxilyzer 8000 was determined by the municipal court to be unreliable in *State v. Johnson*, Portage County Municipal Court, Ravenna Division, Case No. R 2011 TRC 4090.

**{¶5}** On May 11, 2012, Consolo filed a Supplement to Motion to Suppress, arguing, as an additional reason to suppress the breath test results, that the samples were not taken in accordance with Ohio Adm.Code 3701-53-04(B), which requires "a dry gas control test before and after every subject test."

**{¶6}** On August 29, 2012, a suppression hearing was held. Mary Martin, the Program Administrator for Alcohol and Drug Testing at the Ohio Department of Health, testified on behalf of the State. Martin testified that she was trained in the operation of

2

the Intoxilyzer 8000 by the manufacturer, and is responsible for developing regulations for its use.

{¶7}  Martin explained that a "dry gas control" is a "known mixture of ethanol * * * that has a known target value[.] * * * If the instrument can read the dry gas control within an appropriate range * * * that shows that the instrument is in proper working order."[1]

{¶8}  With respect to Ohio Adm.Code 3701-53-04(B), Martin testified that "there is one dry gas control at the beginning of the subject test and one at the end of the subject test."

{¶9}  Consolo's Subject Test Report was introduced into evidence.  The Report contained the following Test Information:

| Test | BrAC (g/210L) | Time |
| --- | --- | --- |
| Air Blank | 0.000 | 02:57 |
| Diagnostic | VAC/OK | 02:57 |
| Air Blank | 0.000 | 02:58 |
| Dry Gas Control | 0.100 | 02:58 |
| Air Blank | 0.000 | 02:58 |
| Subject Test 1 | 0.162 | 03:00 |
| Air Blank | 0.000 | 03:00 |
| Air Blank | 0.000 | 03:03 |
| Subject Test 2 | 0.146 | 03:03 |
| Air Blank | 0.000 | 03:04 |
| Dry Gas Control | 0.100 | 03:04 |
| Air Blank | 0.000 | 03:05 |

{¶10} Martin testified that the term "subject test," as used in Ohio Adm.Code 3701-53-04(B), is undefined.  According to Martin, a subject test "is basically the whole document," i.e., the Subject Test Report, and not Subject Tests 1 and 2 contained within

---

1.  According to the Bureau of Alcohol and Drug Testing's training manual for the Intoxilyzer 8000, introduced as evidence at the suppression hearing: "The instrument automatically performs a DRY GAS CONTROL; The DRY GAS CONTROL checks the accuracy of the instrument before the subject test.

3

the Report. Thus, only two dry gas control tests are required and it is not necessary to perform dry gas controls between Subject Test 1 and Subject Test 2. Martin's understanding of what constitutes a "subject test" for the purposes of Ohio Adm.Code 3701-53-04(B) is consistent with the Bureau of Alcohol and Drug Testing's training manual for the Intoxilyzer 8000.

{¶11} Martin further testified that Subject Tests 1 and 2 are readings of actual breath samples taken from the test subject, i.e., Consolo. She testified that "you have to have two subject samples to have a valid subject test," and that "the lower of the two [is] the chargeable per se level."

{¶12} Finally, Martin testified that, because of confusion as to whether the subject test contained in Ohio Adm.Code 3701-53-04(B) referred to the Subject Test Report or Subject Test 1 and 2, she changed the wording in the Report. The terms Subject Test 1 and Subject Test 2 were replaced with Subject Sample 1 and Subject Sample 2. Although Consolo's Subject Test Report, generated on December 19, 2011, contains the terms Subject Test 1 and 2, the Subject Test Report posted on the Ohio Department of Health's website uses the terms Subject Sample 1 and 2.[2] The BrAC readings are the same on both Test Reports.

{¶13} On August 30, 2012, the municipal court issued a Journal Entry, granting Consolo's Motion to Suppress with respect to the breath test results produced by the Intoxilyzer 8000. Relying on the *Johnson* decision, the court held that, "when a defendant raises a general, scientific attack on the reliability of the Intoxilyzer 8000, it is the State's burden to produce certain evidence to convince the Court that the results

---

The DRY GAS CONTROL target value is 0.100; If the DRY GAS CONTROL results are outside the range of +/- 0.005; (Lower than 0.095 or higher than 0.105) The test will ABORT."
2. http://publicapps.odh.ohio.gov/BreathInstrument/Testreport.aspx?id=84300 (accessed June 12, 2013).

4

from the Intoxilyzer 8000 are scientifically reliable, credible and competent evidence." Since the State did not produce such evidence, the breath test results would not be admitted at trial.

{¶14} The municipal court further held that Ohio Adm.Code 3701-53-04(B) "is clear and is not ambiguous in any way," and that it required a dry gas control to be performed before and after every subject test. Since there was no dry gas control performed between Subject Test 1 and Subject Test 2, the breath test results would not be admitted at trial.

{¶15} Finally, the municipal court found that "the Ohio Department of Health has unilaterally changed the records of Defendant's breath test."

{¶16} For the foregoing reasons, the municipal court dismissed the violation of R.C. 4511.19(A)(1)(d) (driving with a prohibited breath alcohol concentration), and ordered the remaining two counts to be set for trial.

{¶17} On September 5, 2012, the State filed its Notice of Appeal and a Motion to Stay the Execution of Judgment.

{¶18} On appeal, the State raises the following assignments of error:

{¶19} "[1.] [The] Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶20} "[2.] The Portage County Municipal Court erred in finding the testing protocol for the Intoxilyzer 8000 did not comply with Ohio Adm.Code 3701-53[-]04(B), rendering the test results inadmissible at trial."

5

**{¶21}** "[3.] The Portage County Municipal Court erred in excluding the results of the Intoxilyzer 8000 test based on the court's finding that the records of Consolo's breath test results had been changed by the Ohio Department of Health."

**{¶22}** The appropriate standard of review where the lower court's judgment is challenged on a purported misconstruction of the law is de novo. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. "In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court." (Citation omitted.) *Id.*

**{¶23}** Where, however, the issue requires the consideration of factual evidence, a reviewing court must defer to the trial court's factual findings, if supported by competent, credible evidence. *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 41. The reviewing court will then independently determine whether the facts satisfy the applicable legal standard. *Id.*; *Kirtland Hills v. Kunka*, 11th Dist. No. 2012-L-095, 2013-Ohio-738, ¶ 16 ("[o]nce the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts") (citation omitted).

**{¶24}** In its first assignment of error, the State argues that, pursuant to Sections 3701.143 and 4511.19(D)(1)(b) of the Ohio Revised Code, and Ohio Administrative Code 3701-53-02(A)(3), a trial court is required to accept the Intoxilyzer 8000 as an appropriate device for chemically analyzing a person's breath to ascertain the amount of alcohol in the breath.

**{¶25}** The *Johnson* case, relied upon by the municipal court, has been reversed. *State v. Johnson*, 11th Dist. No. 2012-P-0008, 2013-Ohio-440, ¶ 32 ("the legislature has allowed the director of the department of health to determine that the Intoxilyzer 8000 is

6

generally reliable"). This court has held, in many other decisions, that the State is not required to introduce evidence of the Intoxilyzer 8000's scientific reliability for the breath test results to be admissible. *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 26, quoting *State v. Vega*, 12 Ohio St.3d 185, 190, 465 N.E.2d 1303 (1984) ("an accused may not make a general attack upon the reliability and validity of the breath testing instrument").

{¶26} The first assignment of error is with merit.

{¶27} In the second assignment of error, the State argues that the municipal court erred in its interpretation of Ohio Adm.Code 3701-53-04(B). We agree.

{¶28} "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." *Baker v. Powhatan Mining Co.*, 146 Ohio St. 600, 67 N.E.2d 714 (1946), paragraph three of the syllabus; R.C. 1.42 ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage"). "This maxim applies equally to administrative regulations." *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm. of Ohio*, 57 Ohio St.2d 51, 54, 386 N.E.2d 1107 (1979).

{¶29} In the interpretation of administrative regulations, "considerable deference should be accorded to an agency's interpretation of rules the agency is required to administer." *State ex rel. Celebrezze v. Natl. Lime & Stone Co.*, 68 Ohio St.3d 377, 382, 627 N.E.2d 538 (1994); *Swallow v. Indus. Comm. of Ohio*, 36 Ohio St.3d 55, 57, 521 N.E.2d 778 (1988) ("courts * * * must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the

7

legislative command"); *compare Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 107 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute").

{¶30} "[T]he director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath." R.C. 3701.143. Pursuant to this statute, the Director of Health has determined that the Intoxilyzer 8000 "shall automatically perform a dry gas control test before and after every subject test and instrument certification using a dry gas standard traceable to the national institute of standards and technology (NIST)." Ohio Adm.Code 3701-53-04(B).

{¶31} The issue herein is whether the term "subject test" refers to the test of an individual yielding the final result, or whether it refers to the two breath samples necessary to yield the final result. Any confusion on this issue does not derive from the words of the regulation, but from the fact that the Subject Test Form designated the two breath samples as "Subject Test 1" and "Subject Test 2." Such confusion is readily dispelled in light of the Department of Health's interpretation of its own regulation. According to Martin's uncontradicted testimony, a dry gas control is to be performed twice, once at the beginning of the testing procedure and again at the end. This is the way the manufacturer trained Martin in the Intoxilyzer 8000's operation, and, in turn, this is the way the Department of Health has trained law enforcement personnel. We further note that the dry gas control is performed automatically as part of the testing sequence, i.e., the operator does not initiate the dry gas control, rather, the Intoxilyzer is

8

programmed to operate so that only two dry gas controls are performed during each subject test.

{¶32} Other appellate courts that have considered this issue have reached the same conclusion. In *State v. Kormos*, 12th Dist. No. CA2011-08-059, 2012-Ohio-3128, the court of appeals reasoned:

> {¶33} [I]t is quite clear that a "subject test" is synonymous with running the Intoxilyzer 8000 on a single "subject," i.e., "individual" under law enforcement's control. Because the language set forth by the Health Department is clear and definite, we must apply it as written and hold that there is only one "subject" being tested during any one breathalyzer test. *See Kneisley v. Lattimer-Stevens Co.*, 40 Ohio St.3d 354, 357, 533 N.E.2d 743 (1988). It follows that the items listed in the "Subject Test Report" form, including "Subject Test 1" and "Subject Test 2," are simply recurring components of the same breathalyzer test, where one subject blows twice before reaching the end result.

*Id.* at ¶ 16. *Accord Cincinnati v. Nicholson*, 1st Dist. No. C-120332, 2013-Ohio-708, ¶ 11.

{¶34} The second assignment of error is with merit.

{¶35} In the third assignment of error, the State argues that the municipal court erred in its determination that a change in the data displayed on the Ohio Department of Health's website constituted a change in Consolo's records, warranting their suppression. Again, we agree.

9

{¶36} The issue of what information the Ohio Department of Health chooses to publish on its website, and how that information is displayed, is irrelevant to the issue of whether the bodily substance was "analyzed in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). Consolo's original Subject Test Report, generated on December 19, 2011, remains unaltered. This is the only relevant Test Report for establishing Consolo's BrAC.

{¶37} The third assignment of error is with merit.

{¶38} For the forgoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, suppressing Consolo's breath test results and dismissing the OVI charge for violating R.C. 4511.19(A)(1)(d) (driving with a prohibited breath alcohol concentration), is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶39} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

10

{¶40} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶41} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶42} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits,* 138 Ohio App.3d 99, 102 (11th Dist. 1999).

11

{¶43} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶44} Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶45} "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

{¶46} However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due

12

process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

{¶47} The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against this backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

{¶48} Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

{¶49} In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general*." (Emphasis added.) *Id*. at 186.

{¶50} Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after

13

the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, \*16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

{¶51} Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where the defense asserts that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case, if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶52} Breath tests are ""* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

14

{¶53} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion*. *Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶54} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered the state to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶55} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the

15

discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶56} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.